**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | |
| Plaintiff, | CIVIL ACTION NO. 2:24-cv-00465 |
| v. | **JURY TRIAL DEMANDED** |
| SOMFY ACTIVITÉS SA AND SOMFY SA, | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this complaint against

Somfy Activités SA and Somfy SA ("Somfy" or "Defendants") alleging, based on its own

knowledge as to itself and its own actions, and based on information and belief as to all other

matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendants' infringement of the following

United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and

Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 7,260,153 | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 2. | 7,742,388 | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |

2.    Plaintiff seeks injunctive relief and monetary damages.

**PARTIES**

3.    Plaintiff is a limited liability company formed under the laws of Texas with its

registered office address located in Austin, Texas (Travis County).

4.    On information and belief, Somfy Activités SA ("Somfy Activites") is a corporation

organized under the laws of France with its principal place of business located at 50 avenue du Nouveau Monde, F- 74 300 Cluses, France.

5.    On information and belief, Somfy SA ("Somfy SA") is a corporation organized under the laws of France with its principal place of business located at 50 avenue du Nouveau Monde, F- 74 300 Cluses, France.

6.    On information and belief, Somfy Activites is a wholly owned and controlled subsidiary of Somfy SA, and Somfy Activites is part of a multi-national group of companies ("Somfy Group") of which Somfy SA is the parent and controlling entity.

7.    Somfy Activites and Somfy SA are referred to collectively as "Defendants," and on information and belief, have acted in concert with respect to the facts alleged herein such that any act of one is attributable to any and all of the others and vice versa.

8.    On information and belief, Defendants have been engaging in making, using (including testing performed from within the United States), offering for sale, selling, importing, or otherwise providing, within the United States and in particular the State of Texas and this Judicial District, directly, and/or by and through direction and control over their subsidiaries and affiliates, products that infringe the Asserted Patents.

9.    On information and belief, Defendants operate in 59 countries, including the U.S. *2023 Non-Financial Statement*, Somfy, https://service.somfy.com/downloads/group_v4/somfy_dpef_2023_en.pdf at p. 12.

10.    On information and belief, Somfy SA states that Somfy Group is "the global leader in opening and closing automation for both residential and commercial buildings." Somfy, https://service.somfy.com/downloads/group_v4/somfypress_release_-_acquisition_of_a_majority_stake_in_repar-stores.pdf. Somfy SA further states that it is "a

pioneer in the connected home." *Id.* Somfy SA along with its subsidiaries in the Somfy Group, including Somfy Activites, are engaged in research and development, manufacturing, importation, distribution, sales, and related technical services for motorized shades, blinds, curtains, awnings, screens, pergolas, and rolling shutters for residential and commercial applications. *See Products*, SOMFY,                    https://store.somfysystems.com/products/app-voice-control/somfy-tahoma.html?sfy_range_compatibility=TaHoma+compatible (last visited June 20, 2024); *see also* SOMFY, https://www.somfysystems.com/en-us/products/controls/tahoma (last visited June 20, 2024). Moreover, the Somfy Group provides smart home applications, controls, and automation systems to enhance the consumers use of Somfy's products. *Id.* Somfy's products are manufactured outside the U.S. and then imported into the United States, distributed, and sold to end-users *via* the internet and in brick and mortar stores and/or *via* dealers and "Somfy experts" in the U.S., in Texas and the Eastern District of Texas.

## <u>JURISDICTION AND VENUE</u>

11.     FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

12.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

13.     Defendants are subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States, and thus may be sued in any judicial

district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

15.    Defendants are subject to this Court's specific and general personal jurisdiction under due process because of Defendants' substantial business in this District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

16.    Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, by contributing to and through inducement of third parties, and offers their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

17.    Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly), its products within this District. For example, upon information and belief, Defendants have placed and continue to place the Somfy TaHoma Gateway and TaHoma Switch into the stream of commerce *via* an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendants are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive

business in this State and District, including its infringing activities alleged herein, from which Defendants derive substantial revenue from goods sold to Texas residents and consumers.

18.    Defendants commit acts of infringement from this District, including, but not limited to, use of the Somfy TaHoma Gateway and Somfy TaHoma Switch and inducement of third parties to use the Somfy TaHoma Gateway and Somfy TaHoma Switch.

19.    Upon information belief and based on public information, Defendants have authorized sellers and sales representatives that offer and sell products in this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as the following stores located Tyler, Texas: Goyne's Blinds and Shutters, Wilson Window Coverings, AMPM Window Coverings, and Blind Place, Tyler; as well as the store Blind Ambition located in Texarkana, Texas. *See* SOMFY, https://www.somfysystems.com/en-us/where-to-buy (Search for "Interior Window Coverings," in the Zip/Postal Code "75606 Longview, Texas", "United States").

20.    Upon information belief and based on public information, Defendants have authorized sellers and sales representatives that offer and sell products in this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as the Walmart stores located at 1701 E End Blvd N, Marshall, Texas 75670; and 515 E Loop 281, Longview, Texas 75605. *See* WALMART, https://www.walmart.com/ip/Somfy-Tahoma-RTS-ZigBee-Smartphone-and-Tablet-Interface-1811731/759804373?from=/search.

21.    Defendants have placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes

of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

22.     Upon information and based on public information, Defendants utilize established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users in the U.S., including providing links via their website to online stores, retailers, resellers, distributors, and solution partners offering such products and related services for sale.  For example, the Defendants assert that:

> SOMFY controls its distribution (international supply chain, local sales and marketing presence), which means SOMFY can deliver its products worldwide. Its customers are manufacturers and installers, who integrate SOMFY solutions into carrier products: blinds, shutters, doors and gates, or by replacing existing equipment in buildings, by leveraging the strength of the Group's brands. SOMFY also distributes finished products (a selection of motors and control panels, connected objects, digital applications) that are sold by prescribers, networks retailer installers or resellers, via large specialist and DIY stores, and online, either directly or indirectly.

*2023 Non-Financial Statement*, SOMFY, https://service.somfy.com/downloads/group_v4/somfy-_dpef_2023_en.pdf at p. 8.

23.     Upon information and based on public information, such Accused Products have been sold in retail stores, both brick-and-mortar and online, within this District and in Texas, including well-known and widely used retailers, such as Amazon.com and Walmart.  *See* WALMART, https://www.walmart.com/ip/Somfy-Tahoma-RTS-ZigBee-Smartphone-and-Tablet-Interface-1811731/759804373?from=/search; *see also* AMAZON.COM, https://www.amazon.com/Somfy-TaHoma-Compatible-Assistant-SmartThings/dp/B0C2RFDN5T/ref=sxin_16_sbv_search_btf.

24.     Venue is therefore proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) and § 1391(c)(3).

### *Somfy SA*

25.     On information and belief, Somfy SA is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and District, including: (A) at least part of its infringing activities alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Somfy SA is related to, owns, and/or controls subsidiaries (such as Somfy Systems, BFT, and Somfy LLC) and business sectors (such as its Somfy and BFT business) that have a significant business presence in the U.S. and in Texas. Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing Somfy products in Texas, including in this District.

26.     This Court has personal jurisdiction over Defendant Somfy SA, directly and/or through the activities of Somfy SA's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of Defendant Somfy Activites, other members of the Somfy Group, and U.S. based subsidiaries. Through direction and control of these entities, Somfy SA has committed acts of direct and/or

indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Somfy SA would not offend traditional notions of fair play and substantial justice.

27.     On information and belief, Somfy SA controls or otherwise directs and authorizes all activities of its subsidiaries and related entities, including, but not limited to Defendant Somfy Activites, other members of the Somfy Group, and U.S. based subsidiaries. Directly *via* its agents in the U.S. and via at least distribution partners, retailers, reseller partners, dealers, professional installers, and other service providers, Somfy SA has placed and continues to place infringing Somfy products into the U.S. stream of commerce.  For example, import records show that Somfy SA's subsidiary and Defendant Somfy Activites and Somfy SA's subsidiary Somfy Logistique International supplies Somfy products to Somfy Systems Inc. in the United States. *See, e.g.*, U.S. Customs Records for Somfy Activites SA, IMPORT GENIUS, https://www.importgenius.com/suppliers/somfy-activites-sa (last visited June 20, 2024) (showing shipments to Somfy Systems Inc. totaling "163" in the period from November 2006 to June 2024); U.S. Shipment Report for Somfy Activites SA, PANJIVA.COM, https://panjiva.com/shipment_search/results?user_term=1&prefilter=none&type=us_imports&q= Somfy+Activites+SA&commit=Search (last visited June 20, 2024) (showing shipments to "Consignee Somfy Systems Inc." from "Shipper Somfy Activites SA" in the period from December 2023 to March 2024); U.S. Customs Records for Somfy Logistique International, https://www.importgenius.com/suppliers/somfy-logistique-international (last visited June 20, 2024) (showing shipments to Somfy Systems Inc. totaling "23" in the period from November 2006 to June 2024); U.S. Shipment Report for Somfy Logistique International, PANJIVA.COM, https://panjiva.com/shipment_search/results?user_term=1&prefilter=none&type=us_imports&q=

Somfy+Logistique+International&commit=Search (last visited June 20, 2024) (showing shipments to "Consignee Somfy Systems Inc." from "Shipper Somfy Logistique International" in the period from December 2023 to March 2024). Somfy SA has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this District and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

28.    Somfy SA utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users, including providing links *via* its own website to online stores, retailers, detailers, resellers, distributors, and dealers offering such products and related services for sale. *See Where to Buy*, Somfy, https://www.somfysystems.com/en-us/where-to-buy (accessible via menu "Where to Buy" and providing links for "Search Our Dealer Locator," "Connect With a Local Somfy Dealer," and "Shop Online for Somfy Controls & Accessories") (last visited June 20, 2024). For example, upon information and belief, such Somfy products and services have been sold in both brick and mortar and online retail stores and showrooms within this District and in Texas, including Premier Shades & Screens located in Plano, Texas. *See., e.g.*, https://www.facebook.com/premierscreenstx/ ("For a limited time, get a FREE Somfy TaHoma Upgrade ($550 value)"). Somfy products are also sold *via* the national retailers Walmart and Amazon.com. *See* WALMART,

https://www.walmart.com/ip/Somfy-Tahoma-RTS-ZigBee-Smartphone-and-Tablet-Interface-1811731/759804373?from=/search; *see also* AMAZON.COM, https://www.amazon.com/Somfy-TaHoma-Compatible-Assistant-SmartThings/dp/B0C2RFDN5T/ref=sxin_16_sbv_search_btf.

29.     Based on Somfy SA's connections and relationship with manufacturers, dealers, retailers, and digital distribution platforms, Somfy SA knows that Texas is a termination point of the established distribution channel, namely online and brick and mortar stores offering Somfy products and related services and software to third-party manufacturers, distribution partners, retailers (including national retailers), reseller partners, dealers, service providers, consumers, and other users in Texas. Somfy SA, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

30.     In the alternative, this Court has personal jurisdiction over Somfy SA under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Somfy SA is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Somfy SA is consistent with the U.S. Constitution.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendant Somfy SA is a foreign entity and may be sued in any district under 28 U.S.C. § 1391(c). See also In re HTC Corporation, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

### Somfy Activites

32.    On information and belief, Defendant Somfy Activites is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its partners, alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Somfy Activites and parent Defendant Somfy SA and U.S.-based subsidiaries Somfy Systems, BFT, and Somfy LLC manufacture, import, distribute, offer for sale, sell, and induce infringing use of Somfy products to distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users.

33.    This Court has personal jurisdiction over Somfy Activites, directly and/or indirectly via the activities of Somfy Activites' intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including parent Defendant Somfy SA and U.S.-based subsidiaries Somfy Systems, BFT, and Somfy LLC. Alone and in concert with or via direction and control of or by at least these entities, Somfy Activites has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, Somfy Activites operates within a global network of sales and distribution of Somfy products that includes subsidiaries of Somfy, retail stores and showrooms, dealers, resellers, professional installers, and

distributors operating in Texas, including this District.

34.    As a part of Somfy's global manufacturing and distribution network, Somfy Activites also purposefully places infringing Somfy products in established distribution channels in the stream of commerce, including in Texas, *via* distribution partners, retailers (including national retailers), resellers, dealers, brand ambassadors, service providers, consumers, and other users. For example, Somfy Activites imports Somfy products directly to subsidiary Somfy Systems Inc. *See* U.S. Customs Records for Somfy Activites SA, IMPORT GENIUS, https://www.importgenius.com/suppliers/somfy-activites-sa (last visited June 20, 2024) (showing shipments to Somfy Systems Inc. totaling "163" in the period from November 2006 to June 2024); *see also* U.S. Shipment Report for Somfy Activites SA, PANJIVA.COM, https://panjiva.com/shipment_search/results?user_term=1&prefilter=none&type=us_imports&q=Somfy+Activites+SA&commit=Search (last visited June 20, 2024) (showing shipments to "Consignee Somfy Systems Inc." from "Shipper Somfy Activites SA" in the period from December 2023 to March 2024). Therefore, Somfy Activites, alone and in concert with other members of the Somfy Group, its parent entity Defendant Somfy SA and its U.S. based subsidiaries, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. Through its own conduct and through direction and control of its subsidiaries or control by Defendant Somfy SA, Somfy Activites has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Somfy Activites would not offend traditional notions of fair play and substantial justice.

35.    In the alternative, the Court has personal jurisdiction over Somfy Activites under

Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Somfy Activites is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Somfy Activites is consistent with the U.S. Constitution.

36.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Somfy Activites is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

37.    On information and belief, Defendants Somfy SA and Somfy Activites each have significant ties to, and presence in, the State of Texas and this District, making venue in this District both proper and convenient for this action.

## THE ACCUSED PRODUCTS

38.    FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

39.    Defendants use, cause to be used, provide, supply, or distribute one or more computing devices, including, but not limited to the following "Accused Products":

- Somfy smart home hubs and ecosystems, including at least the following models:

    o  Somfy TaHoma Gateway (including at least SKU/item numbers: 1871387, 1811731);[1] and

    o  Somfy TaHoma Switch (including at least SKU/item numbers: 1871037).[2]

40.    On information and belief, the Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including,

---

[1] SOMFY, https://store.somfysystems.com/tahoma-gateway.html.
[2] SOMFY, https://www.somfysystems.com/en-us/products/1871037/tahoma-switch.

but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, 802.11n.

41. On information and belief, the wireless communications perform and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

42. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,260,153

43. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

44. The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003. The '153 patent is entitled "Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels."

45. FCS owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

46. The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data

communications systems.

47.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.     Defendants have directly infringed the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

49.     Defendants have directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  For example, Defendants, using the Accused Products, performs a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams. *See* '153 Evidence of Use Chart attached hereto as **Exhibit A**.

50.     Defendants have also indirectly infringed and continues to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent.  Defendants have induced distributors and end-users, including, but not limited to, Defendants' employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products.  Defendants took active steps, directly or

through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1 of the '153 patent. Such steps by Defendants include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '153 patent. Defendants' inducement is ongoing.

51.     Defendants have also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '153 patent. Defendants have contributed to the direct infringement of the '153 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1 of the '153 patent. The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

52.     Defendants had knowledge of the '153 patent since at least May 8, 2024, the date they received notice of the patent and their infringing activities.

53.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of

others, and thus has been willfully blind of FCS's patent rights.

54.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

55.    Defendants' direct infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

56.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

57.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '153 patent.  Defendants' actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT II:  <u>INFRINGEMENT OF U.S. PATENT NO. 7,742,388</u>**

59.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

60.    The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. The '388 patent is entitled "Packet Generation Systems and Methods."

61.     FCS owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

62.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.  *See* '388 Evidence of Use Chart attached hereto as **Exhibit B**.

63.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

64.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

65.     Defendants have directly infringed and continue to directly infringe one or more claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

66.     Defendants have directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  For example, Defendants perform a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding

subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

67.    Defendants have indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants have been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendants' inducement is ongoing.

68.    Defendants have indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent.  Defendants have contributed and continue to contribute to the direct infringement of the '388 patent by their customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

69.    Defendants had knowledge of the '388 patent since at least May 8, 2024, the date they received notice of the patent and their infringing activities.

70.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

71.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

72.    Defendants' infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

73.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

74.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '388 patent. Defendants' actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its

right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

75.     FCS hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

76.     FCS requests that the Court find in its favor and against Defendants, and that the Court grant FCS the following relief:

 a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

 b. A permanent injunction enjoining Defendants and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '153 patent and the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

 c. Judgment that Defendants account for and pay to FCS all damages to and costs incurred by FCS because of Defendants' infringing activities and other conduct complained of herein;

 d. Judgment that Defendants' infringements of the '153 patent and the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

 e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

 f. That this Court declare this an exceptional case and award FCS its reasonable

attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 20, 2024</u>  Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854)
**ROZIER HARDT MCDONOUGH PLLC**
500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (202) 316-1591
Email: matt@rhmtrial.com

Jonathan Hardt (TX 24039906)
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

<u>**List Of Exhibits**</u>

A.  '153 Evidence of Use Chart

B.  '388 Evidence of Use Chart